In the matter of the application for an attachment against ABRAM S. HEWITT, as for contempt.

1. The right of substitution or subrogation is a purely equitable one, and the extent to which it will be exercised must often depend upon circumstances. Whether it will be extended to the extremest point, so as to include all the rights of the creditor, must often depend on whether it is necessary to the protection of the surety that it should be so.

2. Where a surety, who was subrogated to the rights of a land owner to whom the former has been compelled to pay the debt of his principal for land taken by the principal, (a railroad company,) under the exercise of the right of eminent domain, applied to this court to enjoin the use of the company's road over the land—*Held*, that it was not necessary to his protection to prevent such use, there being nothing to be gained by him through

such injunction; the company being insolvent and its affairs in the hands of a receiver, and the road being operated for the accommodation of the public, merely by a trustee of holders of bonds of the company, with a view to a more advantageous sale of the property on foreclosure.

On motion for attachment.

*Mr. John Linn*, for the motion.

*Mr. C. Parker*, contra.

THE CHANCELLOR.

Julius H. Pratt and Henry C. Spaulding, having been, as bail in error, compelled to pay the amount of a certain verdict with costs, recovered by Samuel K. Benson and Henry K. Benson against The Montclair Railway Company, which at the time of such payment was, and still is, an insolvent corporation, were, by a decree of this court, subrogated to the rights of the plaintiffs in the premises. The verdict was recovered on an appeal by the Messrs. Benson from an award made under the charter of the company, for the value of a lot of land belonging to them, in the township of Bloomfield, in the county of Essex, and damages on condemnation of that property for the purposes of the railroad. By that decree, the sureties were subrogated to all the rights, equities, powers, and privileges of the Messrs. Benson in reference to the land and to the payment of the amount of the verdict and costs by the company; and the amount of the verdict, costs, and interest, with the costs of the proceedings for subrogation, were declared to be a lien on the land ahead of all encumbrances put upon it, or attempted to be put upon it by the company.

It was further ordered, that on due and legal service of notice of that decree, on the receivers of the company, and demand of the payment of the amount of the verdict, costs, and interest to Messrs. Pratt and Spaulding, or to said Samuel K. Benson and Henry K. Benson, unless the same be

paid within ten days thereafter, the company and the receiver and all persons claiming by, from, through, or under them, should absolutely cease and desist from any and all use of the land and every part thereof, until said moneys should be fully paid and satisfied, or until the further order of this court to the contrary.

Mr. Hewitt, as receiver of The New York and Oswego Midland Railroad Company, was operating the road when this decree was obtained. He ceased to do so, however, on the 30th of March last, although a license was given to him by Messrs. Pratt and Spaulding to continue running all trains on the road up to the time of the sale of the road, and until further notice to the contrary, "without prejudice to the rights of Messrs. Pratt and Spaulding in any proceeding had" in this court. From the 1st of April last, to the 30th of July last, the use of the road for public travel ceased. The holders of the second mortgage bonds, previous to, and about the latter date, authorized Mr. Hewitt, as trustee under their mortgage, to operate the road on their account, and he accordingly, as such trustee, resumed the running of trains over the road. The road had then been sold by the receiver. Mr. Hewitt acted on the advice of counsel, in thus operating the road as trustee. He was advised that the prohibition of the decree did not extend to him in that capacity, and that as trustee, he might operate the road without becoming liable to the charge of violating the interdict of this court. A motion is now made for an attachment against him, as for contempt. It is, however, conceded by the counsel of Messrs. Pratt and Spaulding, that his conduct in the premises has not been such as to call for any animadversion on the part of the court, and the real purpose of this motion is understood to be to obtain the views of the court as to the right of the mortgagees to use the road, in view of the above prohibition. That the mortgagees have no greater right in the premises than the company itself, is obvious. The real question is, whether this court will, under the circumstances, deprive the public of the use of the road. The plea of public convenience, or even public necessity, of course, will not avail to deprive a citizen of his

property, without just compensation. The question here, however, is not between the land owners and the company. The former have been paid for their property, and the mortgagees of the company have possession of it. The premises have been adapted to the purposes of the road. The track has been laid down upon it, and constitutes part of a continuous line. It is true that the payment was not made by the company, but by persons who were its sureties, but still the land owners have been paid. These sureties have, indeed, been subrogated to the land owners' rights in the premises, as in equity they should have been. Their counsel properly insist that the right to exclude the company from the use of the property, until the compensation awarded shall have been made, is included in these rights. But the right of subrogation is a purely equitable one, and the extent to which it will be exercised, must often depend on circumstances. Whether it will be extended to the extremest point, so as to include all the possible rights of the creditor, must often depend on whether it is necessary to the protection of the surety that it should be so. Here the debt has been declared to be a paramount lien on the land. In addition to this, the records of this court show that the claim of the land owners was put in in the foreclosure suit, now pending in this court, upon the first mortgage given by the company, and by an interlocutory decree in that suit, made in the month of May last, the right of the land owners is recognized as being paramount and prior to the mortgage. In the final decree, provision may be made for the sale of the land to pay the amount due to the sureties. On the application of the sureties, on proceedings to that end, their lien would be enforced by decreeing the sale of the property to pay the amount due them. To prevent the use of the road by the public, under the provision now made for operating it, cannot legitimately be productive of any advantage to the sureties. The amount due them is about $8000. The company is insolvent. As to it, this means of coercion must be utterly ineffectual. It would probably be no more effectual as against the second mortgagees, whose trustee is

now operating the road, not with the expectation of profit, for the bondholders under his mortgage made up and placed in his hands a guarantee fund, to meet the deficit which it is anticipated will exist between the expenses and the earnings, but to save the road, on a sale, from the depreciation to which the fact of its operation having been abandoned would probably subject it. As against the public, such coercion is not to be contemplated. The sureties will be protected in their claim, and it will be enforced, but under the circumstances, it is neither necessary, nor would it conduce to such protection and enforcement, that the trustee of the second mortgagees should be enjoined from the use now being made of the road.